IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



THE CINCINNATI INSURANCE
COMPANY, as Assignee of
Hylton Hall Partners, LLC,

    Plaintiff,

v.                                Civil Action No. 3:12cv877

JOHN S. RUCH,
et al.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before this Court on Defendants John S. Ruch ("Ruch") and Westover Bon Air Insurance, LLC's ("Westover") (collectively, "Defendants") MOTION TO DISMISS (Docket No. 20), the Amended Complaint filed against them by The Cincinnati Insurance Company ("Cincinnati"), the assignee of Hylton Hall Properties, LLC ("Hylton Hall"). For the reasons set forth below, the motion will be denied.

**FACTUAL BACKGROUND**

Hylton Hall owned property located at 700 Lanier Avenue in Danville, Virginia (the "Property"). Am. Compl. ¶ 9, ECF No. 19. The Property was subject to a deed of trust ("Deed of Trust") that required Hylton Hall to maintain property insurance, which was to provide protection against, inter alia,

fire damage. Id. ¶ 10. According to Cincinnati, sometime before April 15, 2012, Hylton Hall instructed its insurance agent, Ruch, who sold Westover's insurance plans, to reapply for, and to put into force, sufficient property insurance on the Property. Id. ¶ 11. Defendants deny that Hylton Hall ever gave this instruction. Answer to Am. Compl. ¶ 11, ECF No. 22. However, the parties agree that the then-existing property insurance policy lapsed before April 15, 2012 and that, on April 15, a fire (the "Fire") destroyed the Property. Am. Compl. ¶ 12; Answer ¶ 12.

Paragon Commercial Bank ("Paragon"), the beneficiary of the Deed of Trust, maintained a mortgage insurance policy (the "Policy") with Cincinnati. Am. Compl. ¶ 14. Pursuant to the Policy, Cincinnati paid Paragon $618,224.11 for its lost interest in the Property and, as a result, became subrogated to the extent of its payment. Id. ¶¶ 15-16. Cincinnati, in its capacity as subrogee, then sued Hylton Hall for failing to maintain property insurance under the terms of the Deed of Trust. Id. ¶ 17. The parties to that action settled, and, in return for a dismissal with prejudice, Hylton Hall assigned to Cincinnati: "any and all rights, claims, causes of action, suits in equity, or other rights of relief, if any, it may possess to recover from Westover [], or its agents, representative, employees, directors, officers for the failure to place property

2

insurance on the Property on or before April [15], 2012" (the "Assignment"). Pl.'s Resp., Ex. 1, ECF No. 24. As assignee, Cincinnati filed this action against Defendants to recover the amount paid to Paragon.

Count One of the Amended Complaint alleges negligence on the part of Ruch and Westover individually, jointly, severally, or in the alternative. It is alleged that the Defendants had a duty to place the insurance, that they breached their duty, and that the breach was the direct and proximate cause of damages in excess of $618,224.11. Am. Compl. ¶¶ 22-26. Count Two of the Amended Complaint alleges breach of fiduciary duty, claiming specifically that a fiduciary relationship existed by virtue of Defendants' dealings with Hylton Hall, and that Defendants breached their fiduciary obligation to Hylton Hall by failing to place the property insurance. Id. ¶¶ 29-30. Count Three alleges a breach of contract, specifically that Defendants entered into an oral contract with Hylton Hall to place insurance and subsequently breached that contract by not placing the property insurance. Id. ¶¶ 33-36.

In their Answer, Defendants raise a number of affirmative defenses, including failure to state a claim, invalid assignment, contributory negligence, and lack of proximate causation. See Answer at 1-2. In their Memorandum in Support of their Motion to Dismiss, Defendants first argue that Hylton

Hall's assignment of its claims to Cincinnati was invalid, arguing that the failure of an insurance agent to procure insurance is a personal action and therefore not assignable. See Defs.' Mem. in Supp. of Mot. to Dismiss 3-5, ECF No. 21. Defendants also argue that Cincinnati's only potential claim must sound exclusively in contract rather than negligence or breach of fiduciary duty. Id. at 5-9. Finally, Defendants allege that Ruch must be dismissed as a defendant because at all times he was acting as an agent for a disclosed principal, Westover. Id. at 9-10.[1]

**STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) seeks to test the legal sufficiency of the factual allegations made in the Complaint. F.R.C.P. 12(b)(6). Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). As the United States Supreme Court has held, the pleading standard that Rule 8(a) announces does not require "detailed factual

---

[1] This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1). Defendant Ruch is a citizen of Virginia. Ruch's co-defendant, Westover, is a limited liability company and, as such, retains the residency of each of its three members. Each of the members – Ruch, Robert Jones, and Henry G. Hughes – are alleged to be residents of Virginia. On the other side, Plaintiff is a resident of Ohio for diversity purposes. Additionally, the amount in controversy exceeds $75,000.

4

allegations," but it demands more than an unadorned accusation. Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). A pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. Nor does a complaint suffice if it tenders only "naked assertion[s]" devoid of "further factual enhancement." Id. at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted by the court as true, to "state a claim to relief that is plausible on its face." Id. at 570. A claim has facial "plausibility" when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." Id. at 557. Nevertheless, the Supreme Court repeatedly emphasized that alleging plausible grounds for a claim "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to prove the alleged claim. Id. at 556. This pleading standard governs "all civil actions and

proceedings in the United States district courts." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009).

**DISCUSSION**

To decide the motion to dismiss, it is necessary to address four issues: (i) whether the Assignment is valid; (ii) whether Ruch should be dismissed as a named defendant; (iii) whether Cincinnati may maintain a negligence action; and (iv) whether Cincinnati may maintain a breach of fiduciary duty action against Defendants. They will be addressed in turn.

**I. Whether the Assignment is Valid**

Defendants' argument that the Assignment is invalid is a dispositive issue in this case. If the assignment was indeed void ab initio, then Cincinnati lacks standing to bring this action and the motion to dismiss should be granted with prejudice. However, for the following reasons, the Court concludes that the Assignment is valid.

Early in the development of Virginia law respecting the assignability of claims, the test for whether a claim could be assigned was survivability. Specifically, the rule was that, if the assignor had died before assigning his claim, and the claim subsequently could have been brought by his estate, then the claim was assignable. See Winston v. Gordon, 115 Va. 899, 80 S.E. 756, 763 (1914) ("[A]ctions are assignable which survive,

6

and that those which do not survive are not assignable."). Years later, the Supreme Court of Virginia added an additional wrinkle to the meaning of survivability. Survivability, according to the court, required also that the damage for which recovery was sought had to be the <u>direct</u> result of the wrong, rather than an <u>indirect</u> result. See <u>Richmond Redev. & Hous. Auth. v. Laburnum Constr. Corp.</u>, 195 Va. 827, 834, 80 S.E.2d 574, 579 (1954) (construing the then-existing assignment statute "to provide for survival where the damage to property for which recovery is sought is the direct result of the wrong"). That approach prompted much litigation and considerable uncertainty.

To clarify the law with respect to the assignability of claims, the Virginia General Assembly enacted two statutes in 1977. The first, Va. Code Ann. § 8.01-25, virtually eliminated the survivability test simply by making survivable "[e]very cause of action whether legal or equitable, which is cognizable in the Commonwealth of Virginia." The second, Va. Code Ann. § 8.01-26, eliminated the "direct/indirect" distinction, and it also separated the issues of assignability and survivability by providing that: "Only those causes of action for damage to real or personal property, whether such damage be direct or indirect, and causes of action ex contractu are assignable." <u>Id.</u>

The Revisers' Note to § 8.01-26 summarizes the effect of the tandem statutes by explaining that:

7

> Section 8.01-25 allows all causes of actions to survive. Section 8.01-26 separates the issue of assignability from that of survival – i.e. no longer will an action be assignable simply because it survives. Instead, unless the action falls within § 8.01-26, it is not assignable even though it is an action which survives under § 8.01-25. However, with the exception of the elimination of the illogical distinction between direct and indirect damage to property, the section codifies existing case law on the assignment of actions.

Although the Code Revisers gave lip service to the then-existing case law surrounding assignability, they essentially eviscerated it. The only applicable point of law that remained after 1977 was the distinction between claims arising from contract or property damage and those arising from personal injury – the former falling within the scope of § 8.01-26 and the latter falling outside it. See Winston, 80 S.E. at 763 (quoting Graves on Pleading 16) ("Then what tort actions survive? The answer is: Those for wrong to property, real or personal, or which grow out of breach of contract, but not for wrongs done to the person or reputation, or any purely personal wrong, apart from property or contract.").

Failure to procure insurance is a well-established cause of action in Virginia. See Coyne &Delaney Co. v. Selman, 98 F.3d 1457, 1450 n.15 (4th Cir. 1996) (citations omitted). Before the passage of § 8.01-26 in 1977, the Supreme Court of Virginia had twice considered the nature of a cause of action for failure to

8

procure insurance. In Carva Food, a grocery store, Carva Food, ordered its insurance agent, Dawley, to procure insurance on any loss of its groceries caused by accidental discharge of water from the sprinkler system installed in its warehouse. 202 Va. at 544. Dawley never purchased the insurance, and subsequently a severe storm ripped the roof off the warehouse and set off the sprinkler system, causing extensive damage to the groceries. Id. at 545. Although Carva Food dealt with the statute of limitations applicable to Carva Food's claim against Dawley for failure to procure insurance, it nevertheless required the Supreme Court of Virginia to determine whether such a claim sounded in personal injury or property damage. Id. The Supreme Court held that the nature of the claim was personal injury rather than property damage, but the holding turned entirely on the direct/indirect distinction.

> Carva's property was not damaged when the insurance policy was issued without full sprinkler leakage coverage. Its property was damaged when water was discharged from the sprinkler system as the result of a windstorm. Dawley was not instrumental in causing the windstorm, nor was he responsible for its results. The damages would not have occurred except for the happening of a severe windstorm, an intervening event which might have never happened. They were the indirect and consequential results of the wrong charged to Dawley.

Id. at 547.

9

Similarly, in Turner, the Supreme Court of Virginia found the plaintiff's failure to procure insurance claim to be "of a personal nature" and therefore unassignable. 211 Va. at 554. In that case, Harter's insurance agent offered and agreed to obtain an automobile liability insurance policy for Harter, but ultimately failed to do so within the agreed upon time. Id. at 553. Harter was later negligently involved in an automobile accident with Howdyshell, who sued Harter for damages. Id. Howdyshell then settled with Harter's uninsured motorist insurance providers, Travelers and Virginia Mutual, who, as part of the settlement, obtained assignment of Howdyshell's claim against Harter. Id. Harter settled with Travelers and Virginia Mutual by assigning to them his failure to procure insurance claim against his insurance agent. Id. In determining whether Harter's claim was assignable, the Supreme Court of Virginia paraphrased Carva Food and held that the damages were personal in nature because they were only indirectly related to the failure to procure insurance.

> The damage to Harter did not occur when the insurance policy was not issued effecting coverage on the date agreed upon. The damage occurred at a subsequent time because of an intervening event, Harter's negligence in the operation of his car, which might never have occurred. In these circumstances we hold that <u>the action was on a claim of a personal nature for indirect and consequential damages</u> to Harter's estate and was not assignable.

10

Id. at 554.

As previously explained, six years after Turner, the Virginia General Assembly passed § 8.01-26 with the explicit goal of eliminating the "direct/indirect" distinction. See § 8.01-26 ("Only those causes of action for damage to real or personal property, whether such damage be direct or indirect, and causes of action ex contractu are assignable."). Since then, only one Virginia circuit court has addressed the issue of whether a failure to procure insurance claim sounds in personal injury, property damage, or contract in light of the superseding statute.

In Batley v. Davis, 18 Va. Cir. 350 (1989),[2] Craig, driving a car owned and insured by his father, Abner, crashed into another driver, Donna. Id. Donna's guardian, Batley, sued and obtained a money judgment against Craig. Id. Batley was able to collect a portion of the judgment from Abner's insurance coverage, but to recover the other portion of the judgment, Batley obtained an assignment of rights from Craig and sued Abner's insurance agent, Davis, for failure to procure sufficient coverage. Id. The circuit court reasoned that the plaintiff's lack of allegations of damage to the real or personal property of Abner, the policyholder, eliminated property damage as a possible classification for the claim under

---

[2] Batley is an unreported decision.

11

§ 8.01-26. Id. This left only two options, personal injury or contract, to use in classifying the failure to procure insurance claim. In making this determination, the circuit court looked to Turner and Carva Food, and noted that, in both cases, the Supreme Court of Virginia held that failure to procure insurance did not sound in contract, but rather in negligence. Id.

Batley is incorrect for one reason and distinguishable for another. It is incorrect because it assumes two things about the Turner and Carva Food holding that an insurance agent's failure to procure sounds exclusively in negligence. First, it assumes that the holding is a matter of law, and that the facts underlying such a cause of action are not sui generis. That is not the case. Indeed, Turner and Carva Food rely on particular facts to which the court then applies the "direct/indirect" distinction to reach that conclusion in both cases. Thus, even if the holding was a matter of law at the time, § 8.01-26 eliminated the legal underpinnings of Carva Food and Turner in 1977, by rejecting the direct/indirect distinction.

Batley is also distinguishable from this case. The court in Batley relied heavily on the fact that the plaintiff had alleged damage only to the third-party beneficiary's estate instead of the policyholder's estate. See Batley, 18 Va. Cir. 350. As the court suggested, Abner (the policyholder) was legally capable of assigning his claim against Davis, and Craig

(the third-party beneficiary) would have possessed the same capability had Abner first assigned the claim to Craig. Id. But, because Abner never made the assignment to Craig, Craig lacked the capability to assign the claim to Batley (the plaintiff). Id.

In this case, there was no such "break in the chain." Hylton Hall had a valid failure to procure insurance claim against Defendants. An assessment of the underlying facts shows that the claim sounded in property damage (destruction of the Property) and contract (breach of the alleged oral agreement between Hylton Hall and Ruch). Fitting Hylton Hall's claim into the personal injury box would be an intellectual struggle indeed. Black's Law Dictionary defines personal injury as "a hurt or damage done to a man's person, such as a cut or bruise, a broken limb, or the like, as distinguished from an injury to his property." 786 (6th ed. 1990) (no emphasis added). There are simply no facts to suggest that Hylton Hall's claim could be properly classified as such.

Furthermore, this case is reconcilable with Batley because it does not involve the attempt of a third-party beneficiary to assign a claim legally assignable only by the policyholder. Hylton Hall was the policyholder. As the Supreme Court of Virginia has explained, "[a]fter the risk has terminated by fire, the interest of the [in]sured becomes a chose in action,

13

which he has a right to assign, . . . without asking permission of the [insurance] company." Aetna Ins. Co. v. Aston, 123 Va. 327, 96 S.E. 772, 774 (1918) (citations omitted); see also Op. Va. Att'y Gen., No. 10-066, 2010 WL 3800034 (Sept. 24, 2010) ("[P]ost-loss assignments of the benefits due under the policy are viewed as transfers of a chose in action and public policy favors the free alienability of choses in action . . . ."). For the foregoing reasons, the Assignment was valid.

## II. Whether Ruch Should Be Dismissed as a Named Defendant

Defendants contend that Ruch should be dismissed as a named defendant because "there are no independent acts alleged against him, and at all time[s] he was acting as agent for a disclosed principal, Westover." This argument relies exclusively on agency principles. The contentions are that Ruch was an agent of Westover; that all actions taken by Ruch fell within the scope of his employment; that Ruch never agreed to be personally bound on the contract; and that, therefore, he cannot be held personally liable, whether in tort or contract.

The Supreme Court of Virginia has clearly defined the difference between an "agent" and a "broker" with respect to insurance:

> [W]e note that this [c]ourt has drawn a distinction between an insurance agent, who acts as the agent of the insurer, and an insurance broker, who ordinarily is employed

14

> by the person seeking insurance. Although a broker is an agent for the insured, he also may be, at the same time, an agent for the insurer for certain purposes.

Harris v. K&K Ins. Agency, Inc., 249 Va. 157, 160-61, 453 S.E.2d 284, 286 (1995). The "dual agency" described in the last sentence describes the facts presented in this case. See Pac. Fire Ins. Co. v. Bowers, 163 Va. 349, 354, 175 S.E. 763, 765 (1934) ("A broker is the agent for the insured, according to all authorities on the subject, though at the same time for some purposes he may be the agent for the insurer . . . ."). In its Amended Complaint, Cincinnati described Ruch as both Hylton Hall's "insurance broker" and Westover's "agent." See Am. Compl. ¶¶ 11, 13; see also State Farm Mut. Auto. Ins. Co. v. Weisman, 247 Va. 199, 203, 441 S.E.2d 16, 19 (1994) ("[W]hether an agency relationship exists is a question to be resolved by the fact finder <u>unless the existence of the relationship is shown by undisputed facts</u> . . . .") (emphasis added). Because Cincinnati admits, indeed alleges, the existence of dual agency, Ruch owed to both Westover and Cincinnati those duties common to all agents.[3] See Robert H. Jerry & Douglas R. Richmond, Understanding Insurance Law 252 (4th ed. 2007) ("Once an agency relationship between an insured and a broker is established, a

---

[3] For purposes of this case, however, only those duties between Ruch and Cincinnati are relevant.

15

fiduciary relationship generally arises as a matter of law . . . ."). The mere existence of such duties means that Ruch certainly could be liable to Cincinnati for breaching them.[4]

### III. Whether Cincinnati May Maintain a Negligence Action Against Defendants

Defendants attack Cincinnati's negligence theory on two grounds. First, they argue that, because the claim arises out of contract, a negligence theory is precluded. Second, they argue that the economic loss doctrine bars a theory of negligence.

Generally, a claim for breach of contract precludes a negligence claim; but, if the negligence claim is founded on a separate common law duty, then it may be brought in addition to the breach of contract claim. Holles v. Sunrise Terrace, Inc., 257 Va. 131, 136, 509 S.E.2d 494, 497 (1999).

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract

---

[4] The Court does not need to address the related issue argued by Defendants: whether Ruch could be liable to Cincinnati solely on the basis of Ruch's status as agent for Westover. Ruch's status as a named defendant is sufficiently grounded on the fact that Ruch can be liable to Cincinnati as Hylton Hall's agent for both tort and contract claims. Whether Ruch can be reached through the corporate veil of the LLC is a question of fact. See O'Hazza v. Exec. Credit Corp., 246 Va. 111, 115, 431 S.E.2d 318, 321 (1993) (holding that, in instances of piercing the corporate veil, "[e]ach case is sui generis and requires examination of the particular factual circumstances surrounding the corporation and the acts in question").

16

> to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of contract, to take due care, and the defendants are negligent, then the action is one of tort.

Oleyar v. Kerr, 217 Va. 88, 90, 225 S.E.2d 398, 399-400 (1976). In Cincinnati's attempt to fit its negligence claim into the second quoted sentence above, it invokes the duty of an insurance professional to exercise reasonable skill, care and diligence in effecting insurance.

Whether a duty of care exists is a matter of law. Cf. Holles, 257 Va. at 136, 509 S.E.2d at 497. Many courts have recognized that Virginia law imposes a common law duty of care on professionals, wholly apart of any contractual duties. See Coyne & Delany, 98 F.3d at 1470 n.15 (citations omitted); Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Capital Corp., 249 Va. 426, 432, 457 S.E.2d 28, 32 (1995); Oleyar, 217 Va. at 90, 225 S.E.2d at 399-400; see also Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998) (acknowledging "that a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty"). On the basis of this authority, it is legally sufficient for Cincinnati to allege that Defendants breached

this duty and that the breach caused damages as a separate and independent theory for recovery on its failure to procure claim.

Defendants also argue that the economic loss rule bars Cincinnati from recovering under a theory of negligence. The economic loss rule provides that "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." Filak v. George, 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004) (citing Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988)). As already established, however, Virginia law provides an extra contractu common law duty of care that makes the economic loss rule inapposite to this case.

### IV. Whether Cincinnati May Maintain a Breach of Fiduciary Duty Action Against Defendants

Defendants argue that Cincinnati "has not sufficiently pled an action for 'breach of fiduciary duty.'" Def.s' Memo. at 8. They base their argument primarily on the notion that any fiduciary relationship that existed arose solely by virtue of the contract between Hylton Hall and Defendants, and therefore "it does [not] support a separate cause of action for a tortious breach of fiduciary duty." Id. The argument fails to recognize, however, that, "[i]n Virginia, a breach of fiduciary duty can either be considered as sounding in contract or tort

18

law." Peter Nash Swisher et al., Va. Prac. Tort & Personal Injury § 3:11; see also Geographic Network Affiliates-Int'l, Inc. v. Enter. for Empowerment Found. At Norfolk St. U., 69 Va. Cir. 428, 2006 WL 61930, *3 (2006) (concluding that the breach of fiduciary duty alleged was a contract cause of action because the legal duties between the parties arose from a contractual relationship). The distinction is largely meaningless except for the purposes of punitive damages, which are not at issue here.

"An insured may sue a broker for breach of fiduciary duty. Once an agency relationship between an insured and a broker is established, a fiduciary relationship generally arises as a matter of law." See Robert H. Jerry & Douglas R. Richmond, Understanding Insurance Law 252 (4th ed. 2007); see also Burruss v. Green Auction & Realty Co., 228 Va. 6, 10, 319 S.E.2d 725, 727 (1984) ("[A] broker owes his principal the duty to use utmost fidelity to him . . . ."); H-B L.P. v. Wimmer, 220 Va. 176, 179, 257 S.E.2d 770, 773 (1979) ("An agent is a fiduciary with respect to the matters within the scope of his agency."); Restatement (3d) Agency § 1.01 ("Agency is [a] fiduciary relationship . . . .").

Virginia law on this point is not unclear. Ruch, as the broker, along with his company, Westover, owed certain fiduciary duties common to all broker-client relationships. Cincinnati

alleges that "Defendants breached their fiduciary duty by failing to place insurance on the Property prior to April 15, 2012." Am. Compl. § 30. Although Defendants are correct that the alleged breach was in no way the cause of the Fire itself, it was certainly the cause of the depletion of Hylton Hall's bank account in the amount of $618,224.11. Id. § 26. The allegations in the Amended Complaint are sufficient to sustain the breach of fiduciary duty theory.

## CONCLUSION

For the foregoing reasons, the MOTION TO DISMISS (Docket No. 20) filed by Defendants will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 16, 2013